```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

| | |
|---|---|
| JUANITA GARCIA, on behalf of D.G., a minor, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> ) <br> Defendant. ) | Case No. 12 C 4336 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Juanita Garcia, on behalf of her son, D.G., a child under the age of 18, has moved for summary judgment, seeking reversal or remand of the Social Security Administration ("SSA") Commissioner's final decision, denying Plaintiff's claim for Disability Insurance Benefits. Defendant, SSA Commissioner Michael Astrue ("Commissioner"), has filed a cross-motion for summary judgment, requesting that the Court affirm his final decision.

**BACKGROUND**

Garcia applied for supplemental security income on her son's behalf in April 2009, claiming that he suffered from disabling speech impairment with an onset date of October 1, 2005. The Commissioner denied her application initially on June 2, 2011, and on reconsideration on November 20, 2009. On January 12, 2010, Garcia filed a written request for a hearing before an Administrative Law Judge ("ALJ"). Garcia and her son appeared and testified at a hearing held on November 19, 2010. The ALJ issued a decision on December 15, 2010. The ALJ determined that Garcia's son suffered from speech language delay but that his condition did not meet, medically equal, or functionally equal the severity of a listed impairment. The ALJ concluded that Garcia's son was not disabled, and the Appeals Council denied her request for review. Garcia filed the instant action on June 4, 2012.

The following facts, which are taken from the record, are recited to provide context.

*D.G.'s Background*

D.G. was born on April 12, 2000. (R. 56.) He was eight years old on April 9, 2009, when the application was filed and ten years old at the time of the ALJ's decision. (R. 20.) D.G. resides with his mother, Garcia. (R. 162.) Garcia contends that D.G. suffers from speech problems, learning disability with attention deficit disorder ("ADD"), concentration problems, and balance, coordination, and movement problems.

<u>Medical History</u>

D.G. first started seeing his treating physician, Dr. Bernardino Garcia

("Dr. Garcia," no relation to Plaintiff) in January 2007. (R. 333.) On November 10, 2008, Dr. Garcia met with D.G. regarding his speech delay and a recommendation by the school for a hearing test. (R. 340.) Dr. Garcia referred D.G. for an audiogram. On December 20, 2008, Dr. Garcia saw D.G. and noted that D.G. passed his audiology exam. (R. 342, 344.) Dr. Garcia noted that D.G.'s speech was only 60 percent intelligible to anyone besides D.G.'s mother. (R. 342.)

On August 5, 2009, Dr. Garcia saw D.G. and completed a physical exam. Dr. Garcia noted that D.G. was easily distractible and that 50 percent of his speech was understandable. (R. 352.) Dr. Garcia diagnosed D.G. with ADD and recommended a trial of Adderall to help D.G. focus in school. Dr. Garcia recommended a referral to a Pediatric Neurologist. (*Id*.) On November 30, 2009, Dr. Garcia completed a Questionnaire for Psychiatric Disorders/Speech and Language Disorders (a form used to assist the SSA in assessing a claimant's possible entitlement to Social Security) and indicated that D.G. had a speech and language disorder, ADD, and a learning disability. (R. 333.) Dr. Garcia stated that D.G. had an "extreme limitation" in all six areas of evaluation. (R. 333-36.)

On December 4, 2008, Speech-Language Pathologist Leah Songer completed an initial evaluation for D.G. (R. 266-69.) Songer stated that D.G. is able to communicate through verbalizations and that D.G.'s speech was within functional limits in terms of voice, fluency, and resonance. Songer stated that D.G. has sound system disorder, with deficits in processing, memory, sentence formulation, and concepts. Songer recommended that D.G. complete speech and language therapy once a week for six

3

months. (R. 337.) Songer conducted a Clinical Evaluation of Language Fundamentals-4 ("CELF-4") test, on which D.G. variously scored from age equivalent 4 years 9 months to age equivalent 6 years 7 months, despite being 8 years 7 months at the time of the test. (R. 267, 269.)

D.G.'s school counselor/case manager, Diana Santos, noted that D.G. had an output organization deficit but that no additional services were recommended because the deficit could be addressed in the general education classroom with medications and resources support. (R. 284.) Jennifer Marek, the speech language pathologist for the school, completed two Speech-Language Assessment Summaries. On April 22, 2009, Marek noted that D.G. had a communication disorder and that "[D.G.'s] speech is very hard to understand in the classroom. Also, he has trouble communicating effectively due to his difficulty with sentence formation." (R. 316.) On May 20, 2009, Marek stated that D.G. is 100 percent intelligible to a familiar listener and 90 percent intelligible to an unfamiliar listener, with the intelligibility improving to 100 percent of the time after repetition of a statement. (R. 286.) Marek checked the box "sometimes" for the following categories: "Uses inadequate articulation for his age," "Mispronounces those sounds that are typically pronounced correctly by peer," "Produced some misarticulations or phonological processes that are not typical for age," and "Takes a long time to respond to a question or initiate a remark." (R. 285.)

D.G.'s teacher, Michelle HinKamp, completed a Teacher Questionnaire on May 20, 2009. (R. 170-181.) HinKamp noted that D.G. had some problems with acquiring and using information. (R. 171.) In the category "Attending and Completing

4

Tasks," HinKamp stated that D.G. had "No problem" or a "Slight Problem" in all categories. (R. 172.) With respect to "interacting and relating with others," HinKamp stated that a familiar listener could understand 1/2 to 2/3 of speech when the topic of conversation is known and no more than 1/2 when the topic of conversation is unknown. (R. 174.) When the speech is repeated or rephrased, HinKamp stated that a familiar listener can understand almost all of the speech. (*Id.*)

*Social Security Consultants*

On June 11, 2009, Carol Varney, a Speech-Language Pathologist ("SLP"), indicated that D.G. had speech and language delay impairment and that this impairment was severe but did not meet, medically equal, or functionally equal the listings. (R. 324.) On November 13, 2009, Social Security consultants, Michael Schneider, Ph.D and Diane Lowry, SLP, also came to the same conclusion. (R. 376.)

*Hearing and ALJ Opinion*

On April 9, 2009, Garcia completed a Function Report. (R. 149-158.) On November 19, 2010, the ALJ heard testimony from Garcia and D.G. and reviewed the opinions of the individuals discussed above. The ALJ questioned D.G. at the hearing and had to ask D.G. to repeat himself 14 times, presumably because the ALJ could not understand D.G.'s answers. (*See* R. 36-46.)

## LEGAL STANDARD

An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Section 405(g) of the Social Security Act grants federal courts the authority to review the Commissioner's final decision and enter a judgment, affirming, modifying, or reversing the decision, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The scope of judicial review is quite limited; this Court will affirm the ALJ's decision as long as it is supported by substantial evidence in the record and no error of law occurred. *Id.*; *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). Substantial evidence means "more than a mere scintilla"; it is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (*Young*).

In determining whether substantial evidence supports the ALJ's decision, the Court will review the entire administrative record but will not reweigh evidence, reevaluate facts, make decisions of credibility, resolve conflicts in the evidence, or substitute its judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (*Clifford*). Although the district court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (internal citations omitted). The district court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young*, 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly

articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## ANALYSIS

*Applicable Law*

A person under the age of 18 is "disabled" if he does not engage in substantial gainful employment and "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

The Commissioner proceeds through three steps in determining whether a claimant under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a)-(d). The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; and (3) whether the impairment meets, medically equals, or functionally equals the listings. 20 C.F.R. §§ 416.924(b)-(d), 416.926a.

To determine whether the impairment functionally equals the listings, the Commissioner first considers how the child functions as a whole; this consists of looking at all of the child's activities, which include everything the child does at home, at school, and in his community, and evaluating how the child is limited or restricted in those activities, without cabining the child's impairments into any particular domain. 20 C.F.R. § 416.926a(b)-(c); *see* SSR 09-1p.

To determine whether an impairment functionally equals a listing, the

Commissioner considers the child's limitations across six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A child must have "marked" limitations in at least two of the domains, or an "extreme" limitation in one domain, to have an impairment that functionally equals the listings.[1] 20 C.F.R. § 416.926a(a).

*Garcia's Objections*

The ALJ found that D.G. had not been engaged in substantial gainful activity since April 9, 2009 (the application date) and that D.G. had a speech language delay. However, the ALJ held that D.G. did not have an impairment or combination of impairments that are medically equal or functionally equal to the severity of a listed impairment. Garcia argues that the ALJ's determination that D.G.'s impairment does not functionally rise to the level of a listed impairment is not supported by substantial evidence. (Garcia Br. at 9.) In particular, several of Garcia's objections require remand of the ALJ's decision for proceedings consistent with this opinion; these are discussed below.

First, Garcia argues that substantial evidence does not support the ALJ's finding that D.G. had less-than-marked limitation in the domain of "Interacting and Relating with Others," no limitations in the domains of "Attending and Completing Tasks" and "Moving and Manipulating Objects," and less-than-marked limitation in the domain of "Acquiring and Using Information."

---

[1] The possible categories of limitations for the six domains are: "No Limitation," "Less than Marked," "Marked," and "Extreme."

With respect to the "Interacting and Relating with Others" domain, the Social Security regulation provides that a child should be "well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 CFR 416.926a(i)(2)(iv). SSR 09-5p provides: "The ability to interact and relate with others requires the ability to communicate in an age-appropriate manner. . . . Within age appropriate expectations, a child must speak clearly enough to be understood and formulate sentences well enough to convey a message." There was evidence that D.G. cannot communicate in an age-appropriate manner. Indeed, the ALJ asked D.G. to repeat himself 14 times at the SSA hearing, presumably because the ALJ could not understand D.G. Furthermore, the ALJ relied on certain portions of Songer's evaluation but ignored crucial parts of her report. (*See* R. 21-22.) Importantly, Songer conducted a CELF-4 test, and on this test, D.G. variously scored from age equivalent 4 years 9 months to age equivalent 6 years 7 months, despite being 8 years 7 months at the time of the test. (R. 267, 269.) The ALJ did not refer to the results of this test.

The ALJ also relied on Marek's May 20, 2009 questionnaire. (R. 283-323.) The ALJ relied on Marek's statement that D.G.'s speech was 90 to 100 percent under all contexts and improved with repetition. (R. 286.) However, the ALJ did not take into account that Marek checked the box "sometimes" for the following categories: "Uses inadequate articulation for his age," "Mispronounces those sounds that are typically pronounced correctly by peer," "Produced some misarticulations or phonological processes that are not typical for age," and "Takes a long time to respond to a question or

9

initiate a remark." (R. 285.) Furthermore, the ALJ inexplicably did not rely on Marek's April 22, 2009 assessment, in which she stated, "David's speech is very hard to understand in the classroom. Also, he has trouble communicating effectively due to his difficulty with sentence formation." (R. 316.) Furthermore, D.G's teacher stated that as a familiar listener, she could only understand 1/2 to 2/3 of D.G's speech on the first attempt if the topic of conversation were known and no more than 1/2 if the topic is unknown. (R. 174.) In addition, Amy Pobst, the school psychologist, stated that she had difficulty understanding D.G. at her evaluation. (R. 309.)

The ALJ found that D.G. had no limitation in the domain of "Attending and Completing Task," contrary to Dr. Garcia's opinion, in which he stated that D.G. had an "extreme" limitation in this domain. But the record establishes that D.G. had ADD, for which he was medicated, could not stay on task, could not complete sentences, and was failing coursework.

The ALJ also found that D.G. had no limitation in the domain of "Moving and Manipulating Objects." The ALJ noted that the "claimant's teacher noted that there were no problems observed in this domain" and that "there are few references within the medical evidence of record that the claimant has any difficulty moving or manipulating objects." (R. 27.) However, Songer noted that during gross and motor tasks, D.G. demonstrated difficulty with body regulation, such as balance and coordination of movements, and recommended both an occupational and physical therapist. (R. 337.)

The ALJ further found that D.G. had less-than-marked limitation in the domain of "Acquiring and Using Information." However, the record indicates that D.G. failed his

reading and writing classes in the second quarter of third grade, and D.G.'s teacher noted that D.G. had problems functioning in acquiring and using information. (R. 171.) Further, D.G's teacher stated that she needs to "speak slowly and clarify" and "repeat if necessary" with D.G. and that she must "give direction in a logical and time-ordered sequence" and "make instructional transition clear." (*Id*.) In light of the above, Garica's objection that substantial evidence does not support the ALJ's finding that the severity of D.G.'s impairment does not rise to the level of equaling a listing is persuasive.

Second, Garcia argues that the ALJ's rejection of Dr. Garcia's opinion is not supported by substantial evidence. Dr. Garcia attributed "extreme limitations" to D.G.'s condition in all six domains. An "extreme" limitation is one where the impairment very seriously interferes with the child's "ability to independently initiate, sustain, or complete activities" in a domain. 20 C.F.R. § 416.926a(e)(3). The ALJ gave Dr. Garcia's opinion "little weight" because it was "inconsistent with the medical evidence of record and the claimant's activities of daily living" and because his opinion "departs substantially from the rest of the evidence in the record." (R. 22-23.) However, Dr. Garcia's assessment of D.G. does not "depart substantially" from D.G.'s teacher, speech therapist, and social worker, as discussed above.

An ALJ must give "controlling weight" to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(d)(2). Importantly, there is no contrary physician medical opinion calling into question Dr. Garcia's severity of assessment of D.G.'s condition. In this case, because

11

Dr. Garcia's opinion is not inconsistent with other substantial evidence in the record, the ALJ should have given Dr. Garcia's opinions some weight, if not controlling.

The ALJ also noted that the possibility that a "doctor may express an opinion in an effort to assist a patient with whom he sympathizes" and that such a scenario was likely in this case because Dr. Garcia's opinion departed substantially from other evidence in the record. As noted above, this is not true. In *Punzio v. Astrue*, 630 F.3d 704 (7th Cir. 2011), the ALJ rejected a mental residual assessment from the claimant's treating psychiatrist, in part, because it had been solicited by the claimant's attorney. The Seventh Circuit noted:

> The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity. How else can she carry this burden other than by asking her doctor to weigh in? Yet rather than forcing the ALJ to wade through a morass of medical records, why not ask the doctor to lay out in plain language exactly what it is that the claimant's condition prevents her from doing?

*Id*. at 712 (internal citation omitted). In this case, Dr. Garcia was the only treating physician to render an opinion. The ALJ does not cite any evidence that Dr. Garcia rendered a biased opinion regarding D.G.'s condition. Thus, this reason for discounting Dr. Garcia's opinion is not persuasive, particularly in light of the other reasons the ALJ discounted Dr. Garcia's opinion.

The Commissioner argues that the ALJ properly discounted Dr. Garcia's opinion because Dr. Garcia's treatment notes reflect recitation of Garcia's reports, not his own independent medical findings. (Resp. at 5.) The record does not support the Commissioner's argument. Dr. Garcia was D.G.'s treating physician since January 2007.

(R. 333.) But Dr. Garcia did not address D.G.'s speech delay until November 2008, after D.G.'s *school* recommended that D.G. have a hearing test. (R. 340.) At an August 5, 2009 physical exam, Dr. Garcia's treatment notes state, "constant motion, animated, and easily distractive. 50% speech understandable." (R. 352.) When Dr. Garcia was relying on D.G.'s mother's observations, his notes state so. For example, in the "History of Present Illness" section, Dr. Garcia stated, "Per Mom, patient has poor concentration at home." (*Id.*) At this visit, Dr. Garcia diagnosed D.G. with ADD, prescribed him Adderall, and recommended a referral to a Pediatric Neurologist. (*Id.*) Had Dr. Garcia relied solely on D.G.'s mother's observations, it is highly unlikely Dr. Garcia would have prescribed Adderall and recommended a referral to a neurologist.

Third, Garcia argues that the ALJ "failed to look at the 'whole child,' opting instead to rubber stamp the misguided opinions of the state agency consultants." (*Id.*) Garcia argues that the ALJ failed to properly consider the opinion of Dr. Garcia, who stated that D.G. had extreme limitations in certain domains. (*Id.*) As discussed below, the ALJ did not properly discount D.G.'s treating physician's opinion. Therefore, the ALJ should consider Dr. Garcia's opinion in making the "whole child" determination.

Fourth, Garcia objects to the ALJ's assessment of her credibility. "An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, the court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbeck v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004) (internal quotation omitted). In this case, the ALJ's decision does not persuasively indicate why Dr. Garcia's opinion was discounted. The ALJ noted two purported inconsistencies, stating that:

> On the claimant's function report, it was noted that he does not have friends his age, cannot make new friends, and plays no team sports. However, the claimant's primary care physician lists his activities as sports/hobbies, exercise and friends. The claimant's functioning report states that he has difficulty reading and understanding simple sentences, reading and understanding stories in books and magazines. However, Amy Pobst, Ph.D., the school psychologist assessed the claimant at grade level for reading and comprehension.

(R. 23.) But Garcia's function report is consistent with D.G's testimony. D.G. testified that he had no friends and that he does not like sports, though he does like to exercise. (R. 37, 46.) The Commissioner offers no persuasive rebuttal, except merely arguing that the ALJ's credibility determination was not patently wrong.

## CONCLUSION

For the foregoing reasons, Garcia's Motion for Summary Judgment [12] is granted; Defendant's Motion for Summary Judgment [14] is denied. This case is **remanded** to the Commissioner for findings consistent with this opinion.

Date: 1/17/13

_____
JOHN W. DARRAH
United States District Court Judge